**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SPENCE ROMAN, | Case No. 18-CV-1625 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| U.S. BANCORP and DOES 1-10, | **JURY DEMANDED** |
| Defendants. | |

Now comes the Plaintiff, SPENCE ROMAN, by and through his attorneys, and for his Class Action Complaint against the Defendants, U.S. BANCORP ("USB") and DOES 1-10, Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENTS**

1.      This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, resulting from the illegal actions of Defendants, in negligently, knowingly and/or willfully sending, through its agent(s), sales, solicitation and/or other telemarketing text messages to Plaintiff's cellular telephone, in violation of the TCPA and related regulations, specifically the National Do-Not-Call and internal do-no-call provisions of 47 C.F.R. 64.1200(c) and (d), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.      The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private

1

homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.     In enacting the TCPA, Congress intended to give consumers a choice as to how corporate similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on the TCPA's purpose).

4.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13.

5.     Persons, like Plaintiff herein, have no control to stop unsolicited unwanted phone calls to their cellular telephones.

6.      Plaintiff and the members of the proposed Class defined below received unsolicited debt collection calls to their cellular telephones.

## JURISDICTION AND VENUE

7.     This Court had jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under a law of the United States, the TCPA.

2

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, Defendants regularly conduct business throughout this District, and Plaintiff resides within this District.

## PARTIES

9.      Plaintiff is an individual who was at all relevant times residing in the City of Chicago, County of Cook, and State of Illinois.

10.     Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

11.     On information and belief, USB is a corporation of the State of Delaware, which is licensed to do business in Illinois, and which has its principal place of business in Minneapolis, Minnesota.

12.     USB is a "person" as defined by 47 U.S.C. § 153(39).

13.     The true names and capacities of the Defendants sued herein as DOES 1-10 are currently unknown to Plaintiffs, who therefore sues such Defendant by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend his complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

14.     Plaintiffs are informed and believe that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiffs are informed and believe that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTS COMMON TO ALL COUNTS

15.     On or about August 9, 2008, Plaintiff successfully registered his cellular telephone number ending in 4574 with the National Do-Not-Call Registry

16.     During or about 2005, Plaintiff opened a series of accounts with Charter One Bank, including checking and savings accounts.

17.     During or about 2014, USB acquired Charter One Bank and took over the administration of Plaintiff's accounts.

18.     During or about February of 2015, USB informed Plaintiff and other customers by mail that it would be requiring a minimum monthly balance on all accounts and imposing a monthly maintenance fee on all accounts.

19.     USB implemented a policy whereby it would grant Plaintiff and other customers a one-year grace period before the maintenance fee would begin taking effect.

20.     During or about January of 2016, Plaintiff visited one of USB's bank branches for the purpose of closing one of his accounts due to USB's imposition of the monthly maintenance fees.

21.     Plaintiff spoke with a teller at the branch and requested that one of his account be closed and that the remaining balance in the closed account be transferred to another account.

22.     During or about May of 2016, Plaintiff learned that the requested account had not been closed and that he had been charged an overdraft fee.

23.     Plaintiff visited one of USB's bank branches and spoke with a manager about the issue in order to determine why the account had not been closed.

24.     Said manager told Plaintiff that he would address the oversight, refund the overdraft fee, and close the account as Plaintiff had requested.

25.     On or about May 4, 2016, USB issued a refund of $36.00 to Plaintiff for the unauthorized overdraft fee.

26.     During or about the time period of May 2016 through November 2016, Plaintiff left the State of Illinois for the purpose of caring for his mother.

27.     Upon Plaintiff's return, he learned that not only had the account at issue not been closed, but the monthly maintenance fees, which never should have been charged, had been turned over to USB's collection department.

28.     During or about April of 2017, Plaintiff received eight to ten automated telephone calls from Defendants to his cellular telephone, his wife's telephone, and his business line regarding the collection of the alleged debt for unauthorized monthly maintenance fees.

29.     During or about April or May of 2017, Plaintiff asked a representative of Defendants with whom he spoke upon answering one of the automated calls from Defendants, that Defendants cease placing telephone calls to him and only contact him in writing.

30.     Despite this, Plaintiff continued to receive approximately two to three automated calls per week from Defendants thereafter.

31.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

32.     By his actions as described above, Plaintiff revoked any prior express consent that had existed as to the account at issue and terminated any established business relationship that had existed as to the account at issue, as defined under 16 C.F.R. § 310.4(b)(iii)(B).

33.     Plaintiff's actions as described above terminated any established business relationship that may have existed between Plaintiff and USB as to the account at issue, pursuant to 47 CFR § 64.1200(f)(5)(i).

5

34.     Despite Plaintiff's actions as described above, Defendants continued to call Plaintiff regarding the account at issue, in violation of the National Do-Not-Call provisions of the TCPA, thus repeatedly violating Plaintiffs' privacy.

35.     As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

a.     Invasion of privacy;

b.     Intrusion upon and occupation of the capacity of Plaintiff's cellular telephone;

c.     Wasting Plaintiff's time;

d.     Risk of personal injury due to interruption and distraction when receiving unwanted telemarketing calls from Defendants;

e.     Depletion of Plaintiff's cellular telephone battery; and

f.     The cost of electricity to recharge Plaintiff's cellular telephone battery.

36.     On information and belief, Defendants placed the telephone calls described above to Plaintiff using an "automatic telephone dialing system," as defined in 47 U.S.C. § 227(a)(1), and/or an "artificial or prerecorded voice" message, as described in 47 U.S.C. § 227(b)(1)(A).

37.     On information and belief, the purpose of these telephone calls was the attempted collection of an alleged debt.

38.     On information and belief, Defendants routinely uses an automatic telephone dialing systems and/or artificial and/or prerecorded voice messages in the collection of debts in the ordinary course of its business.

39.     Plaintiff did not give Defendants his express consent, invitation or permission to contact him using an automatic telephone dialing system and/or an artificial and/or prerecorded

6

voice message. In the alternative, any prior express consent, invitation or permission which Plaintiff may have given Defendants to contact him in this manner was terminated and revoked.

40.     Defendants' telephone calls to Plaintiff using an automatic telephone dialing system and/or an artificial and/or prerecorded voice message were not made for emergency purposes.

41.     Defendants' telephone calls to Plaintiff utilizing an automatic telephone dialing system and/or an artificial and/or prerecorded voice message, for non-emergency purposes, and in the absence of Plaintiff's express consent, invitation or permission, violated 47 U.S.C. § 227(b)(1).

## CLASS ALLEGATIONS

42.      Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class defined as follows (the "Class"):

> All persons within the United States who received automated telephone calls from Defendants within four years prior to the filing of this lawsuit, who had not granted Defendants prior express consent to place such calls to them and/or who had revoked any such consent.

43.     Plaintiff also brings this action on behalf of himself and all others similarly situated, as members of the proposed sub-class defined as follows (the "Sub-Class"):

> All persons within the United States whose telephone numbers were registered on the National Do-Not-Call Registry for at least 30 days, who had not granted Defendants prior express consent nor had a prior established business relationship with Defendants, or who had revoked such consent and prior established business relationship, who received more than one call made by or on behalf of Defendants that promoted Defendants' products or services, within any 12-month period, within four years prior to the filing of the complaint.

44.     Defendants, their employees and agents are excluded from the Class and the Sub-Class. Plaintiff does not know the number of members in the Class and the Sub-Class, but believes

the Class and the Sub-Class members number in the hundreds, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

45.     The Class and the Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of the Class and the Sub-Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believe and thereon alleges that the Class and the Sub-Class include hundreds, if not thousands of members. Plaintiff alleges that the Class and the Sub-Class members may be ascertained by the records maintained by Defendants.

46.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P.23(a) because the Class and the Sub-Class are so numerous that joinder of the Class and the Sub-Class members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and to the Court.

47.     There are questions of law and fact common to the Class and the Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and the Sub-Class predominate over questions which may affect individual Class and Sub-Class members and include, but are not limited to, the following:

        a.     Whether the Class and Sub-Class members' telephone numbers were called by Defendants using an automated telephone dialing system;

        b.     Whether the Class and Sub-Class members granted Defendants prior express consent to place such calls to them and/or whether they revoked any such consent; and

        c.     Whether Defendants violated the TCPA, 47 U.S.C. § 227, *et seq*.

48.     As a resident of the United States who received automated telephone calls, made by or on behalf of Defendants, without their consent, and whose telephone number was registered on the National Do-Not-Call Registry for at least 30 days, within four years prior to the filing of this Complaint, Plaintiff is asserting claims that are typical of the Class and the Sub-Class.

49.     Plaintiff has no interest adverse or antagonistic to the interests of the other members of the Class and the Sub-Class.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and the Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

51.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class and Sub-Class member. Class treatment will also permit the adjudication of relatively small claims by many Class and Sub-Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

52.     The prosecution of separate actions by individual Class and Sub-Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class and Sub-Class members not parties to such

adjudications or that would substantially impair or impede the ability of such non-party Class and Sub-Class members to protect their interests.

53.     Defendants have acted or refused to act in respect generally applicable to the Class and the Sub-Class, thereby making appropriate final and injunctive relief with regard to the members of the Class and the Sub-Class as a whole.

54.     Defendants failed to comply with the requirements of the TCPA, including but not limited to 47 U.S.C. § 227(b), and 47 C.F.R. § 64.1200(c) and (d), as to the Class members with respect to the above-alleged transactions.

55.     The TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii), provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States…

56.     47 C.F.R. § 64.1200(c)(2) provides that:

> [n]o person or entity shall initiate any telephone solicitation to…[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

57.     47 C.F.R. § 64.1200(d) provides that:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
> …

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

58.     In multiple instances, Defendants placed telephone calls to the Class and Sub-Class members without the prior express consent of the recipients, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

59.     In multiple instances, Defendants placed telephone calls to the Class and Sub-Class members after the members requested they stop and after the members registered with the federal government's Do-Not-Call Registry, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. 64.1200(c).

60.     In addition, on information and belief, Defendants have not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of Defendants, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*, and 47 C.F.R. 64.1200(d).

61.     The size and definition of the Class and the Sub-Class can be identified through Defendants' records and/or Defendants' agents' records.

## COUNT I
## NEGLIGENT VIOLATION OF THE
## TELEPHONE CONSUMER PROTECTION ACT

62.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 61 above as if reiterated herein.

63.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*

64.     As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

65.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## COUNT II
## WILLFUL VIOLATION OF THE
## TELEPHONE CONSUMER PROTECTION ACT

66.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 65 above as if reiterated herein.

67.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

68.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff is entitled to an award of up to $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

69.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.      An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representatives of the Class and the Sub-Class;

b.      An order certifying the undersigned counsel as Class and Sub-Class Counsel;

c.      An order requiring Defendants, at their own cost, to notify all Class and Sub-Class Members of the unlawful conduct herein;

d.      Judgment against Defendants in the amount of $500.00 in statutory damages for each and every negligent violation of the TCPA by Defendants;

e.      Judgment against Defendants in an amount of up to $1,500.00 in statutory damages for each and every knowing and/or willful violation of the TCPA by Defendants;

f.      An order for injunctive relief prohibiting such conduct by Defendants in the future;

g.      Judgment against Defendants for Plaintiff's court costs and other litigation costs; and

h.      Any other relief deemed just and proper by this Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues in this action which are so triable.

RESPECTFULLY SUBMITTED,

SPENCE ROMAN

By:    <u>/s/ David B. Levin</u>
        Attorney for Plaintiff
        Illinois Attorney No. 6212141
        Law Offices of Todd M. Friedman, P.C.
        333 Skokie Blvd., Suite 103
        Northbrook, IL 60062
        Phone: (888) 595-9111, ext. 633
        Fax: (866) 633-0228
        dlevin@toddflaw.com